FILED IN CHAMBERS
U.S.D.C. Atlanta
AO 91 (Rev. 5/85) Criminal Complaint
Case 1:11-mj-00557-LTW Document 1 Filed 04/14/11 Page 1 of 6

APR 14 2011
JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

# United States District Court

**ORIGINAL**

NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

BRIAN KEITH MOSELEY, a.k.a. "Shot"
LATONCIA ROSS
BRANDON WILCOX
LAMAR NAPOLEAN
JEVON FLEETWOOD
DARRIUS TOWNS

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:11-MJ- 557

(Name and Address of Defendant)

I, Special Agent Bret Antwine the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about <u>March 17, 2011 and continuing through April 14, 2011</u> in <u>Fulton</u> County, in the Northern District of Georgia defendants aided and abetted by each other did, (Track Statutory Language of Offense)

conspire to in any way or degree to obstruct, delay or affect commerce and the movement of an article and commodity in interstate commerce, by robbery, that is the unlawful taking and obtaining personal property, that is cocaine, a commodity in interstate and foreign commerce and cocaine proceeds, an article in interstate, from persons whom the defendant believed to be drug traffickers, against those persons' will, by means of actual and threatened force, violence and fear of injury,

knowingly carry firearms during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is the aforementioned Hobbs Act robbery conspiracy referred to above,
in violation of Title <u>18</u>, United States Code, Section(s) 1951, 924(c) and 2.

I further state that I am a(n) Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives and that this complaint is based on the following facts:

See Attachment A

Continued on the attached sheet and made a part hereof. (X) Yes ( ) No

_____
Signature of Complainant
Bret Antwine

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to before me, and subscribed in my presence

April 14, 2011                                              at    Atlanta, Georgia
Date                                                                  City and State

LINDA T. WALKER
United States Magistrate Judge
Name and Title of Judicial Officer                    Signature of Judicial Officer
AUSA Joseph Plummer

ATTACHMENT A

(1) I Bret Antwine, being duly sworn and deposed state that I am a Special Agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed for approximately one (1) year and four (4) months. As a Special Agent for the ATF, I am currently assigned to the Violent Crime Impact Team in Atlanta, Georgia, to primarily investigate violent crimes involving firearms and drug violations that occur in the Northern Judicial District of Georgia. I have worked in this Capacity since December of 2009. I have been a law enforcement officer for over six (6) years. I served as a police officer in the State of Georgia since January 1998.

(2) Indicate that in or about March 2011, ATF received information that Brian Moseley, a.k.a., "Shot," and others associated with him were involved in a home invasion crew that targeted drug dealers to rob of money and drugs such as cocaine, marijuana and MDMA. ATF also learned that Brian Moseley, a.k.a. "Shot" and his associates were using firearms to forcibly effectuate these robberies.

(3) Consequently, ATF utilized ATF Special Agent Chris Rogers who is an undercover agent trained to identify and infiltrate criminal enterprises involved in drug trafficking and home invasion robberies of drug dealers.

(4) On March 28, 2011, during a recorded telephone call, Moseley, a.k.a. "Shot" spoke with ATF Special Agent Rogers and Moseley, a.k.a. "Shot" advised Special Agent Rogers that he and members of his crew committed a robbery in which they took $40,000.

(5) On April 7, 2011, in another recorded telephone call, Moseley, a.k.a. "Shot" advised ATF Special Agent Rogers that he and members of his crew were involved in a home invasion robbery in which they stole 2 kilograms of cocaine.

(6) On March 17, 2011, March 28, 2011 and April 7 and April 10, 2011, Moseley, a.k.a. "Shot" discussed with an ATF agent his willingness to commit a home invasion robbery of people who were represented to be Mexicans who were importing multiple kilogram amounts of cocaine into the United States and who were represented to possess a minimum of 10 kilograms of cocaine at a drug stash house in the Northern District of Georgia.

(7) During these discussions, on March 17, 2011, Brian Moseley, a.k.a. "Shot" (a) while in the Atlanta Division of the Northern District of Georgia introduced other members of his home invasion crew which included Brandon Wilcox a/k/a "June," Jevon Fleetwood and one unidentified male; (b) Moseley, a.k.a. "Shot" and the members of his home invasion crew discussed the necessity of using firearms such as choppers (slang for long rifle or assault rifles) a rental car and a hotel room; and (c) it was proposed that they schedule the home invasion robbery during the month of April in 2011.

(8) On Sunday, April 10, 2011, S/A Rogers returned June's earlier telephone call and June spoke with ATF Special Agent Chris Rogers in order to confirm whether they would proceed with the home invasion robbery as discussed earlier. This telephone call was recorded. June also asked S/A Rogers whether he was taking care of getting the hotel room and rental car. When S/A Rogers asked how many people were showing up to commit the home invasion robbery and how many rental vehicles were needed, June responded that no more than five people would be involved and that they would need one large rental vehicle.

(9) The next day on Monday, April 11, 2011, Special Agent Rogers returned Moseley's earlier call. During this recorded telephone call, Special Agent Rogers mentioned that he had spoken with June the previous day and asked how many people were coming to do the home invasion robbery and was advised five and that they need one rental vehicle. Moseley, a.k.a.

"Shot" confirmed the number of participants but replied that they need two rental vehicles. Moseley, a.k.a. "Shot" also informed S/A Rogers that he (Moseley, a.k.a. "Shot") was cruising (i.e., riding in a car) with his whole crew and that June was with him. June spoke with Special Agent Rogers and advised that he (June), Moseley, a.k.a. "Shot" and the others were cruising. When Special Agent Rogers asked whether they were cruising on the prowl (i.e., looking to rob someone) June initially responded that he was just cruising and then responded affirmatively about cruising on the prowl.

(10) On Thursday, April 14, 2011, Brian Moseley, a.k.a. "Shot," and five (5) other individuals – Latoncia Ross, Brandon Wilcox, Lamar Napolean, Darrius Towns and Jevon Fleetwood – met with Special Agent Rogers in Atlanta in the Northern District of Georgia for the purpose of committing the previously discussed home invasion robbery. Moseley, a.k.a. "Shot," Fleetwood and Brandon Wilcox previously met with Special Agent Rogers on March 17, 2011 as discussed above in paragraph 7. Moseley, a.k.a. "Shot" and his co-conspirators brought a Marlin 30-30 rifle." Also, Jevon Fleetwood had a Smith & Wesson .40 caliber handgun on his person, and Darrius Towns had a .40 caliber Keltec handgun and more than $2,000 in cash on his person and these items were seized from them when they were arrested. During the meeting it was discussed that (a) Special Agent Rogers would go in the drug stash house to obtain cocaine; (b) Special Agent Rogers advised Moseley, a.k.a. "Shot," Ross, Wilcox, Napolean, Towns and Fleetwood that individuals in the drug stash house were armed and had at least ten (10) kilograms of cocaine inside the drug stash house; (c) meanwhile, Lamar Napolean took a leading role and discussed how Moseley, a.k.a. "Shot," and Latoncia Ross, Brandon Wilcox, Lamar Napolean, Darrius Towns and Jevon Fleetwood would commit the robbery by having two co-conspirators enter the drug stash house while the rest covered the front and the back of the drug

stash house; (d) the necessity to use force was discussed and Moseley, a.k.a. "Shot" mentioned "wacking" someone; (e) Moseley, a.k.a. "Shot" acknowledged bringing the 30-30 Marlin rifle and Fleetwood agreed to use it. After these discussions, Special Agent Rogers asked if everyone agreed to commit the robbery and everyone agreed and no one dissented.

(11) Based on your affiant's training and experience I know that cocaine is primarily grown outside of the United States and imported into the United States from places such as Mexico and South America: Peru, Bolivia and Columbia. According to Title 21, United States Code, Sections 801(3) and 801(4) Congress has found that a major portion of the traffic in controlled substances flows through interstate and foreign commerce and that even the local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances.

(12) Therefore, your affiant submits that based on the foregoing, probable cause exists to believe that Brian Moseley, a.k.a. "Shot," Latoncia Ross, Brandon Wilcox a/k/a "June," Lamar Napolean, Darrius Towns and Jevon Fleetwood conspired in any way or degree to obstruct, delay or affect commerce and the movement of an article and commodity in interstate commerce, by robbery, that is the unlawful taking and obtaining of personal property, that is cocaine, a commodity in interstate and foreign commerce and cocaine proceeds, an article in interstate commerce, from other person against those persons' will, by means of actual and threatened force, violence and fear of injury contrary to Title 18, United States Code, Section 1951. Your affiant also submits that probable cause exists to believe that Brian Moseley, a.k.a. "Shot," Latoncia Ross, Brandon Wilcox a/k/a "June," Lamar Napolean, Darrius Towns and Jevon Fleetwood, aided and abetted by each other, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is the aforementioned

Hobbs Act Robbery (18 U.S.C. Section 1951) referred to above, did knowingly carry firearms, in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii) and Section 2.

FURTHER SAYETH YOUR AFFIANT NOT.